IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARTIN O. TADLOCK**, | Case No. 6:15-cv-0770-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant, | |

Drew L. Johnson, OSB 752000, 170 Valley River Dr., Eugene, OR 97401; John E. Haapala, Jr., OSB 061739, 410 E. 10th Ave. Ste. 240, Eugene, OR, 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Martha A. Boden, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Martin O. Tadlock ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") under 42 U.S.C. § 405(g) denying his application for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's decision is AFFIRMED.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff received disability benefits from the Social Security Administration from February 2006 to September 2007. AR 15. The Commissioner found that Plaintiff's medical improvement resulted in a change of status to not disabled as of September 4, 2007. *Id.* Plaintiff

PAGE 2 – OPINION AND ORDER

again filed for DIB on February 7, 2011, alleging disability beginning on August 27, 2010. AR 224. Plaintiff was born on January 25, 1966, and was 44 years old on the alleged onset date. *Id.* He alleges disability due to post-traumatic stress disorder ("PTSD"), adjustment disorder with depressed mood, paranoid personality disorder, chronic prostatitis, hypertension, and headaches. AR 886-87. The Commissioner denied Plaintiff's application initially and upon reconsideration; thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). AR 108-09, 142. Plaintiff appeared at an administrative hearing before ALJ Marilyn Maurer on March 13, 2013, and again at a supplemental hearing on August 6, 2013. AR 38, 70. The ALJ found Plaintiff not disabled from August 27, 2010 through the date of her decision. AR 26. On March 6, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review of that decision.

Additionally, the Veteran's Administration ("VA") found Plaintiff entitled to individual unemployability as of April 16, 2010. AR 322. The VA rated Plaintiff as 30 percent disabled by his prostatitis and 50 percent disabled from depression. *Id.*

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante* 262 F.3d at 953-54; *Tackett* 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ began her opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. AR 18. Because Plaintiff had been found disabled and subsequently not disabled in previous disability determinations, the ALJ considered applying the *Chavez* presumption of continuing non-disability. *See Chavez v. Bowen*, 844 F.2d 691, 693-94 (1988). The ALJ ultimately concluded that applying *Chavez* would not be helpful because the previous ALJ did not assign Plaintiff a Residual Functional Capacity ("RFC"). AR 16. Without an RFC, it would be impossible to determine any degree of changed circumstances after the original closed period of disability. *Id.*

The ALJ applied the sequential evaluation process. AR 18-26. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 27, 2010. AR 18. At step two, the ALJ found Plaintiff had two severe impairments:

PAGE 5 – OPINION AND ORDER

(1) chronic prostatitis and pelvic-floor pain; and (2) adjustment disorder with depressed mood secondary to chronic disease. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 18-20.

    At step three, the ALJ determined Plaintiff had the RFC to:

> [P]erform a range of medium work as defined in 20 CFR § 404.1567(c) with the exceptions noted. He can sit, stand, and walk for up to 6 hours each in an 8 hour work day, for a combined total of 8 hours of activity. Due to pain symptoms attributable to prostatitis, he must be permitted to sit or stand at will while still performing essential work. He can understand, remember, and carry out simple instructions that do not involve interacting with the public or teamwork assignments.

AR 20.

    At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a deputy sheriff and software user support analyst. AR 25. The ALJ called a vocational expert ("VE") to testify at the hearing. AR 58-67. At step five, the ALJ found that based on the testimony of the VE, there are jobs existing in significant numbers in the national economy that Plaintiff can perform. AR 25. These jobs include stores clerk, material handler, and general helper. AR 25-26. Therefore, the ALJ found Plaintiff not disabled. AR 26.

## DISCUSSION

    Plaintiff seeks review of the ALJ's determination. Plaintiff argues the ALJ erred by: (A) finding that Plaintiff's subjective symptom testimony was not fully credible; and (B) improperly discounting or ignoring the medical evidence of treating physicians Drs. Danny Whitehead, Kenneth Walker, and Christopher Bolz.

PAGE 6 – OPINION AND ORDER

**A. Plaintiff's Credibility**

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that

PAGE 7 – OPINION AND ORDER

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 16-3p, *available at* 2016 WL 1119029. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff states he experiences two to eight episodes of prostatitis per year, with each episode lasting up to six weeks. AR 299. During an episode, Plaintiff alleges fevers, chills, pain, exhaustion, flu-like symptoms, difficulty concentrating and remembering, and bladder incontinence. AR 299-300. He states that pain diminishes his ability to walk, stand, or sit for any period of time. AR 301-303. He also alleges constant pain in his prostate and pelvic area. AR 299.

The ALJ considered Plaintiff's subjective statements of disability, but found them not credible. AR 22-23. For example, the ALJ explained that during periods of Plaintiff's supposed incapacity, Plaintiff's objective medical findings were either normal or contradicted his

PAGE 8 – OPINION AND ORDER

assertions. AR 21-22. The ALJ questioned Plaintiff's ability to sit for thirty hours in a plane while travelling to Israel for a ten-day vacation during a period of purported incapacity. AR 21. The ALJ further noted that Plaintiff refused to follow his treating doctor's prescribed treatment in favor of unorthodox and non-sanctioned treatments. AR 22. The ALJ also found Plaintiff was able to go back to work following the determination in 2007 that he was no longer disabled, despite the alleged effects of his chronic conditions. *Id.* Further, the ALJ documented Plaintiff's tendency to make dramatic and factually false statements to medical personnel and the ALJ expressed concern about a potential sham transaction by Plaintiff involving the transfer of his home-based software business to his wife. AR 22-23.

Plaintiff does not offer any rebuttal to the ALJ's conclusions regarding his travel history, the objective findings conflicting with his statements, his refusal to follow his treating doctor's course of treatment, or his ability to work from 2007 through 2010. Plaintiff challenges only the ALJ's characterization that Plaintiff made overly dramatic statements and that the sale of his business was a sham transaction. Because Plaintiff did not object to or raise any arguments against the ALJ's other credibility findings, Plaintiff has waived his right to contest those issues. *See Gunn v. Colvin*, 581 F. App'x 691, 691 (9th Cir. 2014) (noting that the court "reviews only issues argued specifically in a party's opening brief"); *Colter v. Colvin*, 554 F. App'x 594, 595 (9th Cir. 2014) ("Issues not discussed in the body of the opening brief are likewise waived."); *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that the court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief"). Therefore, the Court must determine whether the uncontested reasons outlined above constitute clear and convincing reasons to doubt Plaintiff's credibility.

PAGE 9 – OPINION AND ORDER

Testimony from physicians and third parties about the nature, severity, and effect of the symptoms complained of can provide a clear and convincing reason to doubt Plaintiff's credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Plaintiff states he is "absolutely unable to function" when allegedly suffering the effects of prostatitis. AR 58. As the ALJ notes, Dr. George Decherd, a consulting urologist, stated he had never seen a case of prostatitis manifest itself in the manner claimed by Plaintiff. AR 22, 23, 844. Dr. Decherd's statements are testimony from a physician regarding the nature, severity, and effect of Plaintiff's purported symptoms. Therefore, Dr. Decherd's statements constitute a clear and convincing reason to doubt Plaintiff's credibility cited by the ALJ.

Inconsistencies between Plaintiff's testimony and his conduct can provide a clear and convincing reason to doubt Plaintiff's credibility. *Light*, 119 F.3d at 792. The ALJ contrasted Plaintiff's claim that he sometimes must be hospitalized for his condition with the documented evidence of only a single hospitalization during the relevant period. AR 21. Additionally, the ALJ noted Plaintiff was able to travel to Israel on a ten-day trip, sitting for a thirty-hour flight, without apparent difficulty during an alleged infectious episode. *Id.* These instances show inconsistencies between Plaintiff's testimony and conduct, another clear and convincing reason to doubt Plaintiff's credibility.

Medical noncompliance, without adequate explanation, also may provide a clear and convincing reason to doubt Plaintiff's credibility. *Lingenfelter*, 504 F.3d at 1040. As the ALJ noted, Plaintiff did not follow the course of treatment prescribed by his treating physician, Dr. Roger McKimmy. AR 22, 572. Dr. McKimmy recommended that Plaintiff complete a course of physical therapy and take alpha blockers, because the doctor doubted Plaintiff suffered from prostatitis. AR 569, 572. Instead, Plaintiff chose to see another physician who offered alternative,

non-sanctioned therapies. AR 572. Such medical noncompliance is a valid rationale for doubting Plaintiff's credibility.

Plaintiff's ability to work concurrently with his condition in the years preceding his disability onset date, without evidence of his condition worsening, also provides a valid reason to doubt his credibility. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Plaintiff worked from 2007, after being declared not disabled, until 2010 as a software database programmer while allegedly suffering from prostatitis. AR 98, 322, 880-82. Plaintiff's objective medical tests from 2010 onwards do not document a significant change in his condition from 2007 to 2010.

The issues outlined above were uncontested by Plaintiff and provide clear and convincing reasons to support the ALJ's credibility finding. Because the ALJ provided clear and convincing reasons to discount Plaintiff's credibility that were not contested by Plaintiff, the Court need not address the two reasons provided that were contested by Plaintiff.

**B. Medical Opinions**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing"

PAGE 11 – OPINION AND ORDER

reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

Plaintiff challenges the ALJ's discounting or ignoring the medical evidence from Drs. Whitehead, Welker, and Bolz. Each is addressed in turn.

### 1. Medical Opinion of Dr. Whitehead

The ALJ did not err in according Dr. Whitehead's opinion little weight. Dr. Whitehead was Plaintiff's treating physician during portions of 2011 and 2012. AR 598, 621. In 2011,

PAGE 12 – OPINION AND ORDER

Dr. Whitehead diagnosed Plaintiff with chronic prostatitis, hypertension, impaired hearing, myopia, gastro-intestinal reflux disease, hypogonadism, PTSD, and history of traumatic brain injury. AR 857. In June 2012, Dr. Whitehead completed a "Physical Capacities Evaluation" for Plaintiff, wherein Dr. Whitehead concluded that Plaintiff could sit for a total of four hours, with one hour of standing or walking, in an eight-hour workday. AR 652. Dr. Whitehead further limited Plaintiff to two hours of sitting and one hour of standing at one time. *Id.* He additionally limited Plaintiff to lifting and carrying up to nine pounds occasionally. *Id.*

The ALJ gave little weight to Dr. Whitehead's assessment of Plaintiff's capabilities. AR 23. The ALJ found Dr. Whitehead's assessment was inconsistent with other medical sources of record, and not supported by objective medical evidence. *Id.* Plaintiff argues that Dr. Whitehead's opinion is supported by a preponderance of medical sources and objective evidence of record.

Dr. Whitehead's assessment was contradicted by Drs. Decherd, Martin Kehrli, and Sharon Eder. AR 102, 113-14, 838-46. Thus the ALJ needed to provide specific, legitimate reasons for giving little weight to Dr. Whitehead's opinion.

Plaintiff argues that all other treating physicians agreed with Dr. Whitehead, and the opinions of non-examining physicians do not constitute substantial evidence sufficient to discount Dr. Whitehead's opinion. Indeed, "[t]he opinion of a non examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 830 (emphasis in original). However, a non-examining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan*, 169 F.3d at 600-601.

PAGE 13 – OPINION AND ORDER

Dr. Decherd's opinion, in conjunction with the opinions of Drs. Kehrli and Eder, constitutes substantial evidence. Although Dr. Decherd was a non-examining physician in this case, his opinion concerns matters related to his specialty. The regulations give more weight to the opinions of specialists concerning matters relating to their specialty than to the opinions of nonspecialists. 20 C.F.R. § 404.1527(c)(5); *Holohan*, 246 F.3d at 1202. Because Dr. Decherd is a urologist, and gave an opinion on a urological matter, his opinion is entitled to greater weight than a nonspecialist non-examining physician.

Furthermore, Dr. Decherd gave the most recent report on Plaintiff's condition. When a claimant's condition is progressively deteriorating, the most recent medical report is the most probative. *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). Plaintiff alleges that his condition has progressively deteriorated since the disability onset date.

Finally, Dr. Decherd's opinion was consistent with the opinions of two other non-examining physicians. Thus, while the opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies rejecting a treating physicians opinion, *Lester*, 81 F.3d at 831, Dr. Decherd's opinion is corroborated by other medical opinions of record. Therefore, the ALJ satisfied her duty to provide a specific, legitimate reason, supported by substantial evidence, for according more weight to Dr. Decherd's opinion than the opinion of Dr. Whitehead.

The ALJ also accorded little weight to Dr. Whitehead's opinion because it was not supported by objective medical findings in the record. Plaintiff argues that Dr. Whitehead's opinion was well supported by objective medical findings in the record, and lists numerous appointments and test results in support. The Commissioner responds that most of the evidence

referenced by Plaintiff is subjective symptom testimony, and nearly all objective medical tests were negative for infection and the condition described by Plaintiff.

An ALJ can reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). After Plaintiff's alleged onset date, nearly all evidence in the record indicates normal tests and negative cultures for infection. Thus, contrary to Plaintiff's contention that he is frequently afflicted with infections and fevers, the objective clinical findings were generally normal. *See* AR 346, 381, 561, 572-73, 576, 577, 579-80, 582, 586, 608, 609, 612, 617-18, 627, 630, 694, 696, 780, 793-94, 824-25, 861, 863-64, 904, 906. Plaintiff argues that the record is replete with examples of infections, but offers only an isolated report of an enlarged and boggy prostate as objective evidence. AR 395. The ALJ's conclusion that the objective medical evidence did not support Dr. Whitehead's opinion is a reasonable and rational interpretation of the record, and therefore must be upheld even if Plaintiff offers another rational interpretation of the evidence. *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

An ALJ also may give little weight to a physician's opinion when there are inconsistencies between the opinion and the plaintiff's stated activities. *See Reams v. Comm'r of Soc. Sec. Admin.*, 116 F. App'x 881, 882 (9th Cir. 2004); *Tommasetti*, 533 F.3d at 1039, 1041-41. Dr. Whitehead opined that Plaintiff could sit for up to four hours at a time and stand or walk for one hour during an eight-hour workday. AR 652-53. However, Plaintiff traveled to Israel for ten days, which involved "more than thirty hours of sitting and remaining awake" during his return flight. AR 572. Dr. Whitehead's opinion is inconsistent with Plaintiff's demonstrated

PAGE 15 – OPINION AND ORDER

ability to sit for an extended period of time. Therefore, the ALJ did not err in giving little weight to Dr. Whitehead's opinion.

### 2. Medical Opinion of Dr. Welker

Dr. Welker provided Plaintiff with antibiotics, hydrogen peroxide injections, prostatic massage, and intravenous treatments of nano-particle silver. AR 674, 681. Dr. Welker opined that antibiotics were increasingly ineffective in fighting Plaintiff's prostatitis and that Plaintiff's prostatitis would preclude him from gainful employment. AR 950.

The ALJ noted that the treatments used by Dr. Welker were unorthodox, and not endorsed by Dr. Nina Davis, Plaintiff's treating urologist. *Id.* The ALJ also found that there was no evidence to support Dr. Welker's statement that "an anti-microbial course has been the only one that has been successful in keeping [Plaintiff] out of the hospital." *Id.* Finally, the ALJ questioned Dr. Welker's diagnosis of prostatitis, stating Plaintiff's symptoms could be attributed to pelvic floor dysfunction. *Id.*

The ALJ correctly gave Dr. Welker's assessment little weight because Dr. Welker's treatments were not endorsed by Dr. Davis or the scientific community. The ALJ recited evidence indicating that the American Medical Association does not endorse the treatments favored by Dr. Welker, and that the American Cancer Society deems them dangerous. AR 22. Dr. Davis, Plaintiff's treating urologist, had no knowledge of this form of therapy, and the medical establishment either does not endorse it or deems it dangerous. The standards for evaluating medical opinions put great weight on scientifically demonstrable findings. *See* 20 C.F.R. § 404.1527(a)(1) ("impairment…[must be] demonstrable by medically acceptable clinical and laboratory diagnostic techniques"); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Furthermore, Plaintiff's argument that

PAGE 16 – OPINION AND ORDER

Dr. Davis tacitly supported the therapies because Plaintiff reported improvements does not accurately reflect the record. Dr. Davis endorsed Plaintiff's happiness, not the treatment methods that allegedly helped Plaintiff achieve that happiness. AR 630. The ALJ reasonably found that Dr. Welker's therapies were not supported by Dr. Davis, scientific findings, or scientific institutions.

The ALJ further found that there was no evidence to support Dr. Welker's statement, "an anti-microbial course has been the only one that has been successful in keeping [Plaintiff] out of the hospital." AR 22. Plaintiff essentially argues that because he sought, and was prescribed antibiotics, only antibiotic treatments are effective. Therapies other than antibiotics, however, were effective on several different occasions. In March 2011, Plaintiff reported to Dr. Welker that he experienced less pain and anxiety, and had better energy due to testosterone injections. AR 556-57. In March 2012, Plaintiff told Dr. Davis that Dr. Welker's hydrogen peroxide injections and silver treatments worked wonders, and that he felt significantly better when using those treatments than when using antibiotics. AR 630. Plaintiff also informed Dr. Welker that he preferred hydrogen peroxide injections to antibiotics, and that his issues with prostatitis were lessened, despite being off antibiotics. AR 680-81.

Inconsistencies between a physician's opinion and that physician's own clinical notes are a specific and legitimate reason to accord little weight to the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Not only did Dr. Welker's opinion lack affirmative evidence that Plaintiff required antibiotics, but there was countervailing evidence in the doctor's own notes documenting effective non-antibiotic treatments. For these reasons, the ALJ did not erroneously assess Dr. Welker's opinion.

### 3. Medical Opinion of Dr. Bolz

The ALJ erred by failing to address the opinion of treating physician Dr. Christopher Bolz, but ultimately the error was harmless. The ALJ must consider all medical opinions in the record. 20 C.F.R. § 404.1527(c). On March 1, 2013, Dr. Bolz performed a one-time evaluation of Plaintiff's impairments, specifically his alleged prostatitis. AR 821-24. Dr. Bolz wrote that Plaintiff suffered from "recurrent bacterial prostatitis which has caused disability, cannot maintain even part time employment." AR 825. Additionally, Dr. Bolz reported that Plaintiff's treatment options were limited to antibiotics for a duration of months, with a high chance of complications. *Id.* Plaintiff argues that the ALJ impermissibly ignored Dr. Bolz's opinion in her opinion. The Commissioner responds that Dr. Bolz's notes do not constitute a medical opinion, and even if the notes constituted a medical opinion, failing to include them was harmless error.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Bolz wrote that Plaintiff suffered from diffuse arthralgia of particular severity, and that Plaintiff's prostatitis caused an inability to maintain even part-time employment. AR 824-25. The Commissioner argues that Dr. Bolz's statements are merely recordings of Plaintiff's complaints, and therefore are not the independent judgment of the doctor. Review of the record indicates that Dr. Bolz's note regarding Plaintiff's diffuse arthralgia is merely a recitation of Plaintiff's complaint, as it appears in the area of the chart for gathering subjective symptom information from Plaintiff. AR 824. Dr. Bolz's comments regarding Plaintiff's prostatitis and its effect on his ability to work, however, are not mere recitations of Plaintiff's complaints. *Id.* Rather, those comments appear in the section of the chart labeled "assessments," suggesting Dr. Bolz exercised his own

PAGE 18 – OPINION AND ORDER

judgment in deciding Plaintiff's prostatitis rendered him disabled. *Id.* Because substantial evidence directs that Dr. Bolz exercised his own judgment in assessing Plaintiff's symptoms, his comments constitute a medical opinion and therefore must be considered.

Nonetheless, the ALJ's failure to consider Dr. Bolz's opinion was harmless. A legal error is harmless when it is "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The harmless error analysis is fact-intensive, and harmlessness must be analyzed in light of the circumstances of the case, viewing the record as a whole. *See id.*; *Robbins*, 466 F.3d at 885.

The ALJ's failure to consider Dr. Bolz's opinion was inconsequential because his opinion was consistent with the opinions of Drs. Whitehead and Welker. Drs. Whitehead and Welker both stated that Plaintiff could not work full time due to his impairments. AR 652-53, 950-51. The ALJ gave little weight to both physicians' opinions and the Court has found that the ALJ did not err in doing so. The same considerations in discounting the opinions of Drs. Whitehead and Welker apply to Dr. Bolz's opinion. Therefore, the ALJ's error in failing to consider Dr. Bolz's opinion was harmless.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and the case DISMISSED.

**IT IS SO ORDERED**.

DATED this 31st day of May, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 19 – OPINION AND ORDER